**L.W.\*, Plaintiff–Appellant,**

v.

**Dee GRUBBS, Thomas Nelson; Marlin Hutton; Richard Hill; James Nanson, Defendants–Appellees.**

No. 91–35449.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 7, 1992.

Decided Sept. 3, 1992.

---

\* The case was originally filed under the full name of the plaintiff, but because the disposition called for publication, the court has decided on its own motion to delete the full name of the plaintiff.

Thomas K. O'Shaughnessy, Kerry M. Smith, Black Helterline, Portland, Or., for plaintiff-appellant.

Rives Kistler, Asst. Atty. Gen., Salem, Or., for defendants-appellees.

Before: GOODWIN, Senior Circuit Judge, TANG and THOMPSON, Circuit Judges.

GOODWIN, Senior Circuit Judge:

L.W., a registered nurse employed by the State of Oregon at a medium security custodial institution for young male offenders, was raped and terrorized by an inmate. She sued under 42 U.S.C. § 1983 for damages, and appeals the district court's judgment of dismissal under Fed.R.Civ.P. 12(b)(6) for failure to state a claim against defendants Dee Grubbs, Thomas Nelson, Marlin Hutton, Richard Hill and James Nanson (collectively, "Defendants"). We reverse.

Defendants are state employees who served as L.W.'s supervisors at the custodial institution. According to L.W.'s complaint, which, for Rule 12 purposes, we must accept as true, *Western Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1430 (9th Cir.1985), Defendants hired her to work in the institution's medical clinic and led her to believe that she would not be required to work alone with violent sex offenders. On August 15, 1989, however, Defendants selected inmate David Blehm to work with L.W. alone in the clinic. Blehm was a violent sex offender who had failed all treatment programs at the institution. According to his files, Blehm was considered very likely to commit a violent crime if placed alone with a female. Once alone with L.W. in the clinic, Blehm assaulted, battered, kidnapped and raped her. He also stole certain of her personal belongings.

In her complaint, L.W. alleged that the foregoing facts constituted conduct, under color of state law, which deprived her of her right to liberty without due process of law. L.W. sued on the theory that the government actors violated her constitutional rights by intentionally placing her in a position of known danger, that is, in unguarded proximity with an inmate whose record they knew included attacks upon women.

Defendants moved to dismiss the case for failure to state a claim, arguing that no due process right of L.W. was affected because she was not in custody. The district court granted the motion, agreeing that only a person in official custody could state a section 1983 claim when injured by a third party. In addition to its Rule 12 motion, Defendants had also moved the court for summary judgment on the ground that *res judicata* bars L.W.'s action because she accepted worker's compensation for the incident. The district court did not reach this motion. We will first consider the motion to dismiss.

I. *Section 1983 and Third Party Harm*

■ To state a section 1983 claim, the plaintiff must allege that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a constitutional right. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988) (as amended). In this case involving harm inflicted by a third party who was not a state actor, Defendants argue that L.W.'s claim is barred for three reasons. First, Defendants assert that, under *DeShaney v. Winnebago County, Dep't of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the absence of a custodial relationship between L.W. and the Defendants bars her claim. Second, Defendants argue that, under *Collins v. City of Harker Heights*, —— U.S. ——, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), L.W.'s status as an employee of the Defendants bars her claim. Finally, Defendants argue that L.W.'s complaint is insufficient because it alleges "mere negligence."

## A. Custody

Relying on *DeShaney*, the district court ruled that victim custody was a prerequisite to L.W.'s claim. In so ruling, the court misread *DeShaney* and overlooked circuit case law to the contrary.

As a general rule, members of the public have no constitutional right to sue state employees who fail to protect them against harm inflicted by third parties. *DeShaney*, 489 U.S. at 197, 109 S.Ct. at 1004; *Ketchum v. County of Alameda*, 811 F.2d 1243, 1247 (9th Cir.1987).

This general rule is modified by two exceptions: (1) the "special relationship" exception; and (2) the "danger creation" exception. Although some cases have blended the two exceptions together, *see, e.g., Ketchum*, 811 F.2d at 1247, the distinction is important.

After the state has created a special relationship with a person, as in the case of custody or involuntary hospitalization, cases have imposed liability under a due process theory, premised on an abuse of that special relationship. *See, e.g., Youngberg v. Romeo*, 457 U.S. 307, 314–325, 102 S.Ct. 2452, 2457–2463, 73 L.Ed.2d 28 (1982), (patient in custodial facility for the mentally retarded denied protection from violence); *Estelle v. Gamble*, 429 U.S. 97, 103–104, 97 S.Ct. 285, 290–291, 50 L.Ed.2d 251 (1976), (prisoner denied Eighth Amendment right to medical care).

The "danger creation" basis for a claim, by contrast, necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger. *See Wood v. Ostrander*, 879 F.2d 583, 588–90 (9th Cir.1989) (plaintiff not in custody but state officer created the danger), *cert. denied*, —— U.S. ——, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990); *cf. DeShaney*, 489 U.S. at 201, 109 S.Ct. at 1006 (plaintiff not in custody and state officer did not create the danger). *DeShaney* did not rule that custody was required where the state affirmatively causes the harm. In addition to pointing out that Joshua DeShaney was not in state custody when injured, the Court noted that "[w]hile the State may have been aware of the dangers that Joshua faced in the free world, *it played no part in their creation, nor did it do anything to render him any more vulnerable to them.*" *DeShaney*, 489 U.S. at 201, 109 S.Ct. at 1006. (emphasis added). *DeShaney* thus suggests that had the state created the danger, Joshua might have recovered even though he was not in custody.

In the Ninth Circuit, the law concerning the "danger creation" exception begins with *Wood, supra*. In *Wood* (decided after *DeShaney*), we held that a woman who was raped by a third party could hold a police officer liable under section 1983. In that case, the officer had stopped the car in which the plaintiff was riding, arrested and removed the driver, impounded the car, and left the plaintiff stranded in a high crime area. She was subsequently raped. Even though the plaintiff had not been in state custody, we allowed her claim to go forward because the jury could have found that the defendant officer had affirmatively created the particular danger that exposed her to third party violence.

Similarly, in the present case, the actions of the Defendants created the danger to which L.W. fell victim by elevating Blehm to cart boy status. According to the complaint, the Defendants knowingly assigned Blehm to work with L.W. despite their knowledge that: (1) Blehm was not qualified to serve as a cart boy; (2) Blehm had an extraordinary history of unrepentant violence against women and girls; (3) Blehm was likely to assault a female if left alone with her; (4) L.W. would be alone with Blehm during her rounds; and (5) L.W. would not be prepared to defend against or take steps to avert an attack because she had not been informed at hiring that she would be left alone with violent offenders. The Defendants, like the officer in *Wood*, thus used their authority as state correctional officers to create an opportunity for Blehm to assault L.W. that would not otherwise have existed. The Defendants also enhanced L.W.'s vulnerability to attack by misrepresenting to her the risks attending her work.

These allegations support section 1983 liability. L.W. is not seeking· to hold Defendants liable for Blehm's violent proclivities. Rather, L.W. seeks to make Defendants answer for their acts that independently created the opportunity for and facilitated Blehm's assault on her. *Cf. Wood,* 879 F.2d at 587–88; *see also Cornelius v. Town of Highland Lake,* 880 F.2d 348, 354–59 (11th Cir.1989) (City and prison officials' actions in operating prisoner work squad in populated area could form basis for section 1983 liability where, despite knowledge of prisoners' violent dispositions, officials failed to exercise adequate control and supervision, resulting in kidnapping and terrorizing of a city resident; the officials "significantly increased both the risk of harm to the plaintiff, and the opportunity for the inmates to commit the harm"), *cert. denied,* 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990).

Because custody is not a prerequisite to the "danger creation" basis for a section 1983 third party harm claim, *see also Freeman v. Ferguson,* 911 F.2d 52, 54–55 (8th Cir.1990); *Cornelius,* 880 F.2d at 354–55, and because Defendants affirmatively created the dangerous situation which resulted in L.W.'s assault, the district court erred in dismissing L.W.'s claim for a failure to allege a custodial relationship between her and the Defendants.

### B. Employment

■ Defendants next argue that L.W.'s status as a state employee should bar her claim. Defendants mistakenly rely on *Collins,* —— U.S. ——, 112 S.Ct. 1061.

In *Collins,* city sanitation employee Collins died of asphyxia after entering a manhole. Collins' estate subsequently sued the city under section 1983 for violation of his due process rights. The Fifth Circuit rejected the claim on the ground that section 1983 required proof of an abuse of governmental power separate from proof of a constitutional violation, and that Collins had not· proven such an abuse.

Although the Supreme Court affirmed the Fifth Circuit's dismissal of Collins' section 1983 claim, it rejected the circuit court's reasoning. The Court held that section 1983 does not require a separate showing of an abuse of governmental power. *Collins,* —— U.S. at ——, 112 S.Ct. at 1065. In so holding, the Court made clear that Collins' status as a city employee did not affect the merits of his claim. *Id.* ("The employment relationship ... is not of controlling significance.")

In rejecting Collins' claim, the Court held that Collins had not alleged affirmative culpable acts by the city. According to the Court, Collins' complaint alleged merely that "the city deprived him of life and liberty by failing to provide a reasonably safe work environment." *Id.* —— U.S. at ——, 112 S.Ct. at 1069 (footnote omitted). The Court pointed out that Collins had *not* alleged that "his supervisor instructed him to go into the sewer when the supervisor knew or should have known that there was a significant risk that he would be injured." *Id.*

Under *Collins,* we cannot dismiss L.W.'s claim against Defendants merely because she was an employee supervised by them. Moreover, the shortcomings identified by the Court in Collins' complaint do not exist in L.W.'s complaint. Unlike Collins, L.W. alleges that the Defendants took affirmative steps to place her at significant risk, and that they knew of the risks. Contrary to Defendants' arguments, *Collins* actually supports L.W.'s claim.

### C. "Mere Negligence"

■ Finally, Defendants argue that L.W.'s claim is barred because it alleges "mere negligence" and section 1983 does not permit such claims. *Davidson v.· Cannon,* 474 U.S. 344, 347–48, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986). Defendants misread L.W.'s complaint, however. Neither the Supreme Court nor this court has stated what mental state beyond "mere negligence" is required· for due process third party harm claims. The Supreme Court and this court have observed that not every tort· claim automatically becomes a constitutional wrong. Something more than an ordinary tort is required. We need not address the hypothetical boundaries

here, however, because L.W. has alleged facts demonstrating official deliberate indifference in creating the danger. *See Wood,* 879 F.2d at 588. L.W. has alleged that Defendants knew that Blehm was a violent sex offender who had failed all treatment and was likely to assault a woman if alone with her, and that, even knowing this, Defendants intentionally assigned Blehm to work alone with L.W. in the clinic.

### D. L.W. Has Stated a Claim Under Section 1983

L.W. has alleged that she was deprived of her liberty because Defendants, acting in their capacity as state correctional officers, affirmatively created a significant risk of harm to her, and did so with a sufficiently culpable mental state. Accordingly, we hold that L.W. has stated a claim under section 1983 for violation of her due process rights.

### II. *Res Judicata*

In addition to arguing that L.W. has not stated a claim under section 1983, Defendants argue that L.W.'s receipt of Oregon state worker's compensation bars her claim under either the election of remedies doctrine, or under the theory that the state has already provided her a remedy that conforms to due process of law and, therefore, has not deprived her of liberty without due process. Because the district court granted Defendants' motion to dismiss, it declined to reach the *res judicata* argument. We likewise decline to discuss these issues. This court reviews actual decisions. We hold that the complaint stated a Section 1983 claim. It is for the trial court first to decide the effect of affirmative defenses, if any, that the state actors may plead.

REVERSED and REMANDED.